Chief Judge GUTIERREZ
Concurring in Part and Dissenting in Part.
The Idaho Supreme Court has reminded the Idaho judiciary that restitution is not a substitute for a civil action. In State v. Straub, 153 Idaho 882, 890, 292 P.3d 273, 281 (2013), the court explained:
The restitution statute was never meant to be a substitute for a civil action where the law is settled as to damages and the quantum of admissible proof needed to prove those damages. If we allow all foreseeable damages to be clothed in criminal restitution, we will draw to a standstill an already overburdened criminal court process. Prosecutors and criminal defense attorneys would then have to engage in civil discovery and trials of a civil nature on top of already complex criminal procedure and trials.
Eddins’ case is one of those cases where a civil action is the appropriate proceeding for the victim, Hight, to pursue damages. For the reasons that follow, I concur in part II, section A of the majority opinion, but I respectfully dissent from part II, section B affirming the district court’s order of restitution.
Under the statutory scheme of Idaho Code § 19-5304, a district court is directed to award a victim economic losses incurred by the victim that were actually and proximately caused by the defendant’s already adjudicated criminal act, unless inappropriate or undesirable. State v. Corbus, 150 Idaho 599, 602, 249 P.3d 398, 401 (2011). Heeding the advisory given by the Idaho Supreme Court, I am persuaded that this is a case where it would be inappropriate or undesirable to award restitution to Hight through the statutory restitution process. The appropriate proceeding, in this case, for addressing the issues of causation, and potentially compara *653 tive fault or a similar principle, is a civil action.
Eddins was acquitted of aggravated battery and instead found guilty of aggravated assault. As the majority deduces, “the jury appears to have found that Eddins committed an assault by threatening to do violence to Hight.” Thus, the assault, through a threat of violence, is the criminal act from which statutory restitution must be causally related. The majority proffers two cases, State v. Cottrell, 152 Idaho 387, 271 P.3d 1243 (Ct.App.2012), and Corbus, 150 Idaho 599, 249 P.3d 398, to support its conclusion that Hight suffered economic loss or injury as a result of the defendant’s criminal act, I.C. § 19—5304(1)(e)(i). However, Eddins’ case is not as clear cut as the majority makes it out to be. There are several significant ways in which the instant ease is distinguished from those cases with respect to the restitution issue.
One of the significant distinctions is that this case was tried before a jury and the jury trial resulted in an acquittal of the aggravated battery charge; both Cottrell and Corbus involved guilty pleas. In both Cottrell and Corbus, the underlying cause of the economic loss was apparent and the facts as to the cause were undisputed. In Eddins’ case, the parties have conflicting testimony, recalling different versions of the incident that resulted in Hight incurring acid burns.[1] Thus, this ease has open questions relating to actual cause and proximate cause. Moreover, this case raises the issue of comparative fault or a similar concept that was not present in either Cottrell or Corbus.
The primary issue in Cottrell was whether Cottrell’s obstruction of a police officer was the actual cause of the officer’s injury. The officer was arresting Cottrell when Cottrell failed to put his hands behind his back as instructed. When the officer attempted to gain control over Cottrell, the officer twisted his knee. The magistrate awarded restitution in relation to the knee injury. On appeal, Cottrell asserted that the officer’s injury was not caused by his conduct. We concluded that the actual cause was satisfied because evidence showed “it was Cottrell’s acts of attempting to pull away from [the officer] during arrest that precipitated the need for [the officer] to gain control of Cottrell and, in so doing, twist his knee.” Cottrell, 152 Idaho at 393, 271 P.3d at 1249 (emphasis added).
The officer in Cottrell was trying to effectuate an arrest when Cottrell began his criminal act of obstructing an officer. During the criminal act, the officer reasonably responded by attempting to gain control of Cottrell and twisted his knee while Cottrell was still committing the criminal act. When Cottrell’s criminal act ended and he was under control again, the officer had already injured his knee. Accordingly, restitution was proper because during and as a result of the criminal act, the officer suffered an injury that resulted in an economic loss. In contrast to Cottrell, when Eddins’ criminal act was completed, the victim was still uninjured — Eddins’ criminal act of aggravated assault by threat was complete once the threat had been made. As noted below, what happened after Eddins made the threat is unclear.
The primary issue in Corbus was whether a victim’s act, taken to escape a situation, was proximately caused by Corbus’ criminal act. In Corbus, the Idaho Supreme Court addressed the award of restitution to a victim who was, in essence, trapped inside Corbus’ vehicle while Corbus was driving his vehicle at night with the headlights disengaged and reaching speeds in excess of 100 mph during a police chase. The victim escaped the situation by taking flight — jumping from the vehi *654 ele when the vehicle had slowed to approximately 50 mph to make a turn. The victim suffered injuries as a result of jumping from Corbus’ vehicle. Corbus challenged the finding of proximate cause, contending that the victim’s act of jumping from the vehicle was not proximately caused by Corbus’ criminal conduct. Corbus, 150 Idaho at 604-05, 249 P.3d at 403-04. The Court disagreed because the facts demonstrated that Corbus had created a dangerous situation and it was reasonably foreseeable for the victim to jump out of the vehicle to avoid more serious injuries resulting from Corbus’ driving. Id. at 604-05, 249 P.3d at 403-04. “This is especially true given that jumping from the vehicle was the only means available to the [the victim] to escape the dangerous situation.” Id. at 605, 249 P.3d at 404.
In this case, it has not been established what act caused the acid to splash on Hight or what happened after the presumed threat. Thus, in contrast to Corbus, I cannot determine that there are similar circumstances, such as that Hight’s actions were reasonably foreseeable to escape or protect himself from the dangerous conditions created by Eddins’ criminal conduct.
Hight’s and Eddins’ conflicting testimony resulted in the jury acquitting Eddins of aggravated battery. The majority hypothesizes that “the jury could have found that Hight responded to Eddins’ threat by pushing Eddins, causing the bottle of acid to spill over both men.” However, the purpose of the statutory restitution process is to award those economic losses caused by the already adjudicated criminal act; the purpose is not to search for or speculate as to what act caused the damage.
The uncertainty as to what act caused the injury separates Eddins’ case from Cottrell and Corbus. In Cottrell, it was undisputed that the officer injured his leg while regaining control over Cottrell during the commission of Cottrell’s criminal act of obstruction. In Corbus, it was undisputed that the victim was injured as a result of jumping from the vehicle during Corbus’ commission of his criminal acts of reckless driving and eluding a police officer. In this case, the jury presumably found that there was a threat, but there was some other event that occurred between the completion of the criminal act and the injury in this case. It has not been established what the other event is because of the jury’s bifurcated verdict and conflicting testimony from Eddins and Hight.
Whether the other event that occurred after the threat was an intervening cause or was reasonably foreseeable as a natural consequence of the threat is a question properly left to be answered in a civil action. This case also raises the issue of whether Hight contributed to his own injury by grabbing the bottle or aggressing in some way against Eddins. Indeed, under comparative fault or a similar principle, Hight’s potential recovery in a civil action may be reduced or rejected.
In sum, we are bound by the framework of section 19-5304, as interpreted by the Idaho Supreme Court in Straub. Because of the uncertainties caused by the bifurcated jury verdict and conflicting testimony in this case, an award of restitution to Hight is inappropriate or undesirable. The cause of Hight’s damages is better left to be addressed under the well-established principles and procedures of civil law.

. Hight testified that he was driving his car when he saw Eddins. According to Hight, Eddins saw the car and chased after it; Hight then stopped the car and got out of it to confront Eddins. Hight recalls that Eddins charged at him, saying something unintelligible, and then hit him in the face with a bottle of acid.
Eddins testified that he saw Hight in Hight’s car, that he was concerned that Hight would steal his property, and thus he followed Hight's car. According to Eddins, Hight stopped and exited the car and got "right up in [his] face." Eddins then testified that he told Hight, "Back off, man, I have acid.” Hight then escalated the confrontation by pushing Eddins and, according to Eddins, this push resulted in acid splashing over both of them.